Filed 6/17/13  P. v. Navarette CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>EDUARDO NAVARETTE,<br><br>Defendant and Appellant. | B244604<br><br>(Los Angeles County<br>Super. Ct. No. LA070334) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Susan M. Speer, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, James William Bilderback II and Stephanie C. Santoro, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \*

Defendant Eduardo Navarette challenges his conviction for oral copulation of a child under 10 and child molestation. His sole claim on appeal is that *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*) and its progeny required excluding his statements made to officers during custodial questioning. We disagree and affirm.

## FACTS AND PROCEDURE

On multiple occasions, when C.C. was six or seven years old, defendant put his penis and tongue in or around C.C.'s vagina. Defendant removed C.C.'s and his underwear and clothing. In a tape-recorded interview played for jurors, defendant admitted to touching C.C.'s vagina, "tapping" his "thing" to her "thing," and putting his mouth on her vagina. Defendant denied putting his penis inside C.C.'s vagina.

Defendant was convicted of two counts of oral copulation on a child under 10 (Pen. Code, § 288.7, subd. (b)) and two counts of child molestation (§ 288, subd. (a)). For the oral copulation counts, defendant was sentenced to two concurrent prison terms for 15 years to life. Defendant was sentenced to two 6-year prison terms for the child molestation counts, but both were stayed pursuant to section 654.

## DISCUSSION

The sole issue on appeal is whether defendant's tape-recorded statements should have been excluded under *Miranda*. "Although there is a threshold presumption against finding a waiver of *Miranda* rights [citation], ultimately the question becomes whether the *Miranda* waiver was knowing and intelligent under the totality of the circumstances surrounding the interrogation." (*People v. Cruz* (2008) 44 Cal.4th 636, 668 (*Cruz*).) As we explain, we find no violation of *Miranda*.

### 1. Background

On March 12, 2011, Officer Jason Goode read defendant his *Miranda* rights and asked defendant if he wanted to speak. Defendant refused to speak. Officer Goode did not ask defendant any additional questions.

On March 14, 2011, Detectives Pam Pitcher and Nanette Toosbuy spoke to defendant. They first asked him general questions about his family and background. They gave him no *Miranda* advisement prior to asking these questions. After about one-

2

third of the interview and prior to asking questions about any crime, Pitcher read defendant his *Miranda* rights and asked him if he wanted to speak. Defendant answered that he wanted to speak. Pitcher asked defendant if he wanted to speak in English or Spanish or both. Defendant replied "both."

During the interview, Detectives Pitcher and Toosbuy repeatedly exhorted defendant to tell the truth and suggested that he would feel better if he told the truth. They told appellant that good people sometimes do bad things and described him as a good person. When defendant asked what would happen to him, Pitcher responded that the district attorney's office, not the detectives decide what will happen.

During the interview with the detectives, defendant described his conduct with C.C. and admitted to putting his mouth on C.C.'s vagina and putting his penis on her vagina. Prior to trial and again during trial, defendant objected to the admission of his pretrial interview based on *Miranda*.

### 2. Analysis

Officers are required to "scrupulously honor" a suspect's invocation of the right to remain silent. (*People v. Wash* (1993) 6 Cal.4th 215, 238; see also *Michigan v. Mosley* (1975) 423 U.S. 96, 103-104 (*Mosley*).) "The police may not attempt to circumvent the suspect's decision 'by refusing to discontinue the interrogation upon request or by persisting in repeated efforts to wear down his resistance and make him change his mind.'" (*Wash*, at p. 238.) "In *Mosley*, despite the defendant's invocation of the right to remain silent, the high court declined to find a *Miranda* violation because 'the police . . . immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings, and restricted the second interrogation to a crime that had not been a subject of the earlier interrogation.' [Citation.]" (*People v. Martinez* (2010) 47 Cal.4th 911, 950.)

Following the United States Supreme Court's decision in *Mosley*, the California appellate court found the defendant's right to remain silent had not been violated. (*People v. Warner* (1988) 203 Cal.App.3d 1122, 1131 (*Warner*).) The *Warner* court explained: "[w]here, as here[,] there is no evidence of police misconduct and police

3

immediately ceased the interrogation, resumed questioning only after the passage of a significant period of time and the provision of a fresh set of warnings," the defendants statements were properly admitted. (*Ibid*.) The *Warner* court emphasized that the "record is devoid of even a hint that police at any time tried to 'wear down' defendant's resistance, or 'browbeat' him into submission, or used any form of force or coercion or threatened him or made promises to him, or resumed questioning only a short time after he had invoked his rights, or that there was any kind of collusion among the officers." (*Id*. at p. 1130.)

*Warner* is indistinguishable from this case. As in *Warner*, there was no evidence that officers sought to wear defendant down and force him to speak. When Detective Pitcher asked defendant if he would like to speak, he responded affirmatively. When asked in what language he would like speak, defendant responded both English and Spanish. There was no evidence that defendant resisted or that detectives forced him to speak.

There is no merit to defendant's contention that because he invoked the right to remain silent on March 12 he could not change his mind on March 14. Officer Goode scrupulously complied with defendant's wishes on March 12. Additionally, prior to questioning him about the crimes on March 14, defendant was again read his *Miranda* rights. He had the opportunity to invoke his right to remain silent but chose not to do so. The only difference between this case and *Mosley* is that defendant was questioned about the same crime in the March 14 interview as in the March 12 interview, whereas in *Mosley* the second interview concerned a different crime. But that distinction is not "sufficient, in and of itself, to render the second interrogation unconstitutional." (*Warner*, *supra*, 203 Cal.App.3d at p. 1130.)

Defendant's heavy reliance on *In re Z.A.* (2012) 207 Cal.App.4th 1401 (*Z.A.*) is misplaced. In *Z.A.*, the court found *Z.A.*'s statements were improperly obtained after she invoked the right to remain silent. (*Id*. at p. 1405.) During an interview, Z.A. stated, "'I don't want to answer anymore [*sic*] questions.'" (*Id*. at p. 1410.) Officers continued to ask her questions. (*Id*. at pp. 1410-1411.) They did not clarify her intent or re-admonish

4

her concerning her right to remain silent. (*Id*. at pp. 1420-1421.) "[A]fter Z.A. invoked her right to remain silent, the officers failed to 'scrupulously honor[]' that invocation, and instead, intensified their interrogation of Z.A." (*Id*. at p. 1422.) In contrast here, officers did not continue to question defendant after he invoked his right to remain silent. Defendant was re-advised of his *Miranda* rights on March 14, and chose to waive them.

Defendant correctly points out that he was not advised of his *Miranda* rights until partway through the interview on March 14. Citing *People v. Honeycutt* (1977) 20 Cal.3d 150, 160-161, he argues that the officers "softened him up" and befriended him before asking him to speak about the case, and for that reason should have been suppressed. In *Honeycutt*, the California Supreme Court found a confession inadmissible because the defendant's waiver "resulted from 'a clever softening-up of a defendant through disparagement of the victim and ingratiating conversation . . . .'" (*People v. Scott* (2011) 52 Cal.4th 452, 478 (*Scott*).) No similar disparagement of the victim or ingratiating conversation occurred here and defendant's reliance on *Honeycutt* is therefore misplaced. This case is more akin to *Scott*, at page 478, in which the high court found the defendant waived his right to remain silent even though the defendant was asked questions prior to the *Miranda* advisement when all questions were recorded and there was no evidence of disparagement of the victim or ingratiating conversation.

Finally, defendant argues his confession was involuntary. Defendant's argument is forfeited because defendant did not raise it in the trial court. (*Cruz*, *supra*, 44 Cal.4th at p. 666.) "As a consequence of the issue not having been raised below, 'the parties had no incentive to fully litigate this theory . . . and the trial court had no opportunity to resolve material factual disputes and make necessary factual findings.'" (*Id.* at p. 669.)

In any event, based on our record defendant demonstrates no lack of voluntariness. "'"Once a suspect has been properly advised of his [or her] rights, he [or she] may be questioned freely so long as the questioner does not threaten harm or falsely promise benefits. Questioning may include exchanges of information, summaries of evidence, outline of theories of events, confrontation with contradictory facts, even debate between police and suspect. . . . Yet in carrying out their interrogations the police must avoid

5

threats of punishment for the suspect's failure to admit or confess particular facts and must avoid false promises of leniency as a reward for admission or confession. . . ." [Citation.]'" (*People v. Carrington* (2009) 47 Cal.4th 145, 170.)  Here, the record shows no threats of punishment, false promises of leniency, or improper interrogation techniques.  The record does not show officers coerced defendant or revealed circumstances calculated to undermine his free will.  (See *Scott*, *supra*, 52 Cal.4th at p. 477.)  There were no psychological ploys """"which, under all the circumstances, are so coercive that they tend to produce a statement that is both involuntary and unreliable."'" [Citation.]" (*People v. Williams* (2010) 49 Cal.4th 405, 443.)

## DISPOSITION

The judgment is affirmed.


FLIER, J.

WE CONCUR:


BIGELOW, P. J.


GRIMES, J.

6